[redacted]

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | | |
|---|---|---|
| **SARONIC TECHNOLOGIES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 26-358** |
| | ) | |
| **v.** | ) | **Judge Kaplan** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | [redacted] |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

Dated: June 30, 2026

DocuSigned by:
Anne Perry
E1032B55CE3A4D3...

Anne B. Perry
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006
(202) 747-1913
aperry@sheppard.com
*Attorney of Record*

*Of counsel:*
Ryan E. Roberts
Katie A. Calogero
Christie M. Alvarez
Lillia J. Damalouji
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Kendra L. Wharton
WHARTON LAW PLLC

*Attorneys for Saronic Technologies, Inc.*

[redacted]

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. ISSUES PRESENTED ........ 2

A. Whether Saronic is a prospective offeror that suffered a non-trivial competitive injury in the procurement to establish standing under this Court's bid protest jurisdiction. ........ 2

B. Whether the Government failed to follow 10 U.S.C. § 3453, Preference for Commercial Products and Commercial Services, as reinforced by Executive Order 14271, Ensuring Commercial, Cost-Effective Solutions in Federal Contracts. ........ 2

C. Whether the Government has met its burden of demonstrating that its unduly restrictive specifications are reasonably necessary to meet its minimum needs. ........ 2

D. Whether the Government's market research and decision not to set aside the O&S requirement for sUSVs for small businesses was improper. ........ 2

E. Whether Saronic is entitled to judgment on the administrative record. ........ 2

III. STATEMENT OF THE CASE ........ 2

IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS ........ 6

A. Saronic Is An Interested Party To Bring This Complaint Because Saronic Is A Prospective Offeror Who Would Have Submitted A Proposal But For The Agency's Unlawful Actions And Saronic Suffered A Non-Trivial Competitive Injury. ........ 6

V. RESPONSE TO DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD ........ 11

A. The Government's Post-Hoc Rationalizations Fail To Demonstrate That The Government Properly Complied With 10 U.S.C. §3453, Preference For Commercial Products And Commercial Services, As Reinforced In Executive Order 14271 ........ 11

B. The Government Has Not Met Its Burden Of Demonstrating That Its Unduly Restrictive Specifications Are Reasonably Necessary To Meet Its Minimum Needs. ........ 16

[redacted]

C. The Government's Market Research And Decision Not To Set Aside The Operation And Sustainment Requirement for sUSVs For Small Businesses Was Improper Because It Was Based On The Irrational Assumption That Fragmentation Would Interfere With Operations ........ 20

D. Saronic Established All Four Factors For Injunctive Relief ........ 21

VI. CONCLUSION ........ 23

[redacted]

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Safety Council, Inc. v. United States*
122 Fed. Cl. 426 (2015) ....................16

*CSI Aviation, Inc v. United States*
__Fed. Cl. ___, 2026 WL 1296071 (2026) ....................7, 8

*Honeywell Int'l, Inc. v. U.S.*
142 Fed. Cl. 91 (2019) ....................14

*Mgmt. and Training Corp. v. United States*
115 Fed. Cl. 26 (2014) ....................7, 20

*Omega World Travel*
B-258374, 1995 WL 19607 (Comp. Gen. Jan. 13, 1995) ....................16

*Palantir USG, Inc. v. United States*
129 Fed. Cl. 218 (2016), *aff'd*, 904 F.3d 980 (Fed. Cir. 2018) .................... passim

*Palantir USG, Inc. v. United States*
904 F.3d 980 (Fed. Cir. 2018) .................... passim

*Percipient.AI, Inc. v. United States*
153 F.4th 1226 (Fed. Cir. 2025) ....................2, 8, 9

*Savantage v. United States*
595 F.3d 1282 (Fed. Cir. 2010) ....................14

*U.S. Foodservice, Inc. v. United States*
100 Fed. Cl. 659 (2011) ....................18

*Weeks Marine, Inc. v. United States*
575 F.3d 1352 (Fed. Cir. 2009) ....................7

**Statutes**

10 U.S.C. § 3453 .................... passim

15 U.S.C. § 637(b)(7) ....................10

28 U.S.C. § 1491(b)(1) ....................6, 8

31 U.S.C. § 3551(2)(A) ....................6

[redacted]

Competition in Contracting Act ("CICA") ....................6, 10, 16, 22

**Regulations**

48 C.F.R. § 10.002(c) ....................11, 13

48 C.F.R. § 11.002(a)(2) ....................11, 13

**Other Authorities**

Executive Order 14271, 90 Fed. Reg. 16433 (Apr. 15, 2025) .................... passim

Executive Order 14402, 91 Fed. Reg. 24325 (Apr. 30, 2026). ....................4

*Sea drone rescues US Army helicopter crew near Strait of Hormuz*, BBC (Jun. 9, 2026), https://www.bbc.com/news/articles/cwy0l44ex5wo ....................10

[redacted]

# I. INTRODUCTION

The Naval Sea Systems Command's ("NAVSEA," "Government," or the "Navy") Motion to Dismiss and, in the alternative, response in opposition to Plaintiff's Motion for Judgment on the Administrative Record and Cross-Motion for Judgment on the Administrative Record (the "Navy's Motion") further demonstrate that the contents of Solicitation No. N00024-26-R-6311 (the "Solicitation") were the result of the Navy's failure to comply with the mandatory preference for commercial products and commercial services in 10 U.S.C. § 3453 ("Preference for Commercial Products and Commercial Services") and Executive Order 14271 ("Ensuring Commercial, Cost-Effective Solutions in Federal Contracts"), and was unduly restrictive of competition.

Most telling is the Navy's complete and unexplained failure to address the controlling case on this exact question – *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218 (2016), *aff'd*, 904 F.3d 980 (Fed. Cir. 2018), a decision from this Court, as affirmed by the Federal Circuit. Not only is *Palantir* directly applicable to the facts at hand, it was the primary case upon which Saronic relied in its Motion for Judgment on the Record. Irrespective of whether the Navy was unable to differentiate *Palantir*, or simply made the inexplicable decision not to address the primary legal authority applicable to these facts, the end result is the same – this Court should grant Saronic's MJAR.

As in *Palantir*, there is an absence in the Administrative Record of market research having been conducted on the availability of the commercial services to fulfill the small Unmanned Surface Vehicles ("sUSV") Operations and Sustainment ("O&S") portion of the work contained in the Solicitation – a clear violation of both 10 U.S.C. § 3453, as well as recent Executive Order 14271 and implementing guidance. Further, as in *Palantir*, Saronic is

[redacted]

challenging the terms of the Solicitation and explains that, but for the violations raised in this case, it would have submitted a proposal as a prime contractor. Rather than addressing the controlling law and agency guidance on the challenged violation head on, the Government instead relies on a standing argument based upon a case in which the relevant facts are completely distinguishable, *Percipient.AI, Inc. v. United States*, 153 F.4th 1226 (Fed. Cir. 2025). There, the protester conceded that it never intended to be a prime contractor, filed a post-award protest years after the award of the contract to a third party, and contended that it was improperly denied a subcontract. Simply put, the Government's reliance is strikingly misplaced.

As a result, and as set forth in Saronic's MJAR and below, Saronic has demonstrated that it is entitled to injunctive relief.

## II. ISSUES PRESENTED

**A. Whether Saronic is a prospective offeror that suffered a non-trivial competitive injury in the procurement to establish standing under this Court's bid protest jurisdiction.**

**B. Whether the Government failed to follow 10 U.S.C. § 3453, Preference for Commercial Products and Commercial Services, as reinforced by Executive Order 14271, Ensuring Commercial, Cost-Effective Solutions in Federal Contracts.**

**C. Whether the Government has met its burden of demonstrating that its unduly restrictive specifications are reasonably necessary to meet its minimum needs.**

**D. Whether the Government's market research and decision not to set aside the O&S requirement for sUSVs for small businesses was improper.**

**E. Whether Saronic is entitled to judgment on the administrative record.**

## III. STATEMENT OF THE CASE

Saronic is an American defense technology startup that specializes in building cutting-edge unmanned surface vehicles that enable maritime security and domain awareness by combining best-in-class hardware, software and artificial intelligence into one scalable, fully

[redacted]

integrated platform. Saronic has secured government agreements to collaborate on Autonomous Surface Vessels, including an Other Transaction Authority ("OTA") award by NAVSEA to collaborate on the production of the "Corsair" sUSV (a 24-foot autonomous vessel) (the "Saronic OTA"), which included development of operational maintenance and sustainment support systems. *See* AR, Tab 5, at AR 68-71. The Saronic OTA is part of a broader Pentagon push towards rapid development of unmanned systems (*Id*. at 69), an endeavor that is in line with 10 U.S.C. § 3453, which requires agencies to accommodate commercial and non-developmental solutions rather than engage in developmental work. It is also reinforced by President Trump's recent Executive Order 14271, which explains:

> Previous administrations evaded statutory preferences and abused the Federal contracting framework by procuring custom products and services where a suitable or superior commercial solution would have fulfilled the Government's needs. Doing so simultaneously stifled the integration of commercially available innovations in Government procurement while increasing Government spending, resulting in avoidable waste and costly delays to the detriment of American taxpayers. My Administration will enforce existing laws directing the Federal Government to utilize, to the maximum extent practicable, the competitive marketplace and the innovations of private enterprise to provide better, more cost-effective services to taxpayers.

Exec. Order No. 14271, 90 Fed. Reg. 16433 (Apr. 15, 2025).

Following the OTA, Saronic began offering these products and services commercially to government agencies. [1]

In relation to the Saronic OTA and the production of the Corsair, Saronic has invested heavily in the development of these sUSVs, including the development of the O&S services as well as the Saronic Software that is used in the O&S services, exclusively at private expense.

[1] For example, on the Company's General Services Administration ("GSA") Federal Supply Schedule. Price List, Contract No. 47QTCA26D003X (Gen. Servs. Admin. Mar. 9, 2026), https://www.gsaadvantage.gov/ref_text/47QTCA26D003X/47QTCA26D003X_Saronic_FSS.pdf
.

[redacted]

Notwithstanding the recent production of the Corsair sUSV and associated development of O&S support available within NAVSEA, on January 16, 2026, NAVSEA issued a Solicitation (Request for Procurement ("RFP") No. N00024-26-R-6311) for O&S for the LCS MM and sUSVs as a FAR Part 15, non-commercial procurement (*See* AR, Tab 16) – which included development of the very same O&S services Saronic developed and offers as commercial services. *See* Price List, Contract No. 47QTCA26D003X (Gen. Servs. Admin. Mar. 9, 2026), https://www.gsaadvantage.gov/ref_text/47QTCA26D003X/47QTCA26D003X_Saronic_FSS.pdf.

However, the RFP included terms and conditions that, when combined, can only be performed by a large, non-commercial, traditional defense contractors. For example, the Government made all O&S Contract Line Item Number ("CLINS") Cost-Plus-Fixed-Fee, and the Solicitation requires offerors to submit substantiating cost data in their proposals that commercial and nontraditional offerors cannot – and should not be required to – provide. AR, Tab 16, at AR 370-73; 381-82.[2] The Solicitation also gives preference to offerors that can provide at least Government Purpose Rights in both noncommercial and commercial technical data, computer software, and computer software documentation ("TD/CS/CSD"), stating that the "risk associated with the offered rights for both noncommercial and commercial TD, CS, and CSD licenses. . . will impact the assigned adjectival rating for this factor." AR, Tab 16, at AR 381. Moreover, the Solicitation explicitly states that if an offeror proposes to deliver commercial TD/CS/CSD with less than the desired level of rights, the Government will consider the corresponding adverse impact in its best value determination, effectively penalizing offerors of

[2] Shortly after the filing of this pre-award bid protest, President Trump issued Executive Order 14402, ("Promoting Efficiency, Accountability, and Performance in Federal Contracting"), directing that all executive brand departments and agencies "shall, in procurement, utilize fixed-price contracts . . . or contracts that tie profit to performance-based metrics when appropriate." Exec. Order No. 14402, 91 Fed. Reg. 24325 (Apr. 30, 2026).

[redacted]

commercial services in the competition if they properly assert their commercial rights in their technical data and computer software. AR, Tab 16, at AR 368-69; AR, Tab 20a, at AR 468.

The Government asserts that the basis for this non-commercial, competitively restrictive procurement is that [redacted] that implicates "operational readiness and national defense interests." Gov't Resp. at 16, 19-20. Additionally, the Government asserts that it conducted "extensive" market research between October and November 2024 (more than one year prior to the issuance of the Solicitation) to form its determination. *See* Gov't Resp. at 4, 19. However, the Administrative Record demonstrated nothing more than the Government's predetermined conclusion that the procurement would not utilize commercial services. *See generally*, AR, Tab 8; AR, Tab 11.

At the outset, as part of the Government's market research, it issued a Request for Information ("RFI"), but the RFI did not include sUSV O&S services as part of its scope. *See* AR, Tab 4, at AR 58-66. The Government also conducted an industry day on November 1-2, 2024. *See* AR, Tab 8, at AR 119. However, the resulting Market Research Report discussing these efforts did not include any analysis of available commercial alternatives for the sUSV O&S services. *See generally*, AR, Tab 8. Moreover, the Government's Acquisition Plan only addressed [redacted] AR, Tab 11, at AR 212. Conspicuously missing from this commercial item determination is any discussion of the sUSV component, or any reflection of the Government's purported concerns regarding "operational readiness and national defense interests." *See, e.g.*, Gov't Resp. at 16, 19-20. Further, when asked to provide its plan for the [redacted]

[redacted]

[redacted] the Government only responded [redacted] AR, Tab 11, at AR 212. The Government later added a single unsupported, conclusory statement [redacted] *Id.*

Accordingly, on March 4, 2026, following issuance of the Solicitation, Saronic filed this protest challenging the Government's failure to comply with both 10 U.S.C. § 3453 and Executive Order 14271's mandatory preference for commercial products and commercial services, impermissibly defined requirements in a manner that excludes commercial solutions to satisfy the Government's needs, and imposed additional terms in Solicitation No. N00024-26-R-6311 (the "Solicitation") that are improper and unduly restrictive of competition. *See generally*, Saronic Complaint (ECF 1).

## IV. RESPONSE TO DEFENDANT'S MOTION TO DISMISS

### A. Saronic Is An Interested Party To Bring This Complaint Because Saronic Is A Prospective Offeror Who Would Have Submitted A Proposal But For The Government's Unlawful Actions And Saronic Suffered A Non-Trivial Competitive Injury.

Pursuant to the Tucker Act, the U.S. Court of Federal Claims has jurisdiction to render judgment on an action by an "interested party" objecting to (1) a solicitation by a Federal agency for bids or proposals for a proposed contract, (2) a proposed award or the award of a contract, or (3) any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. *See* 28 U.S.C. § 1491(b)(1).

The Competition in Contracting Act ("CICA") provides that an "interested party" is an "actual *or prospective* bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A) (emphasis added). Saronic is a contractor who has the financial capability and expertise to perform the

[redacted]

contract and would submit a proposal as a prime contractor under a solicitation that complies with the law. Saronic is thus clearly a prospective offeror.[3] *See* Saronic MJAR at 3-5. In a pre-award context such as this, the Federal Circuit has recognized that a "direct economic interest" is demonstrated where a protester has suffered a non-trivial competitive injury that can be redressed by judicial relief. *See Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359-63 (Fed. Cir. 2009); *Mgmt. and Training Corp. v. United States*, 115 Fed. Cl. 26, at 35-37 (2014). Courts frequently refer to such competitive injury as "prejudice." *Mgmt. and Training Corp.*, 115 Fed. Cl. at 36. Indeed, courts have found that parties suffer the requisite "non-trivial competitive injury" to achieve interested party status where they were deprived of an opportunity to submit a bid. *Id.* As this Court recently explained in *CSI Aviation, Inc v. United States*, No. 25-1338C, 2026 WL 1296071 (Fed. Cl. May 12, 2026), this is because in a pre-award context, such as this one, "[t]he relaxed standing test is a direct and necessary accommodation to the evidentiary predicament inherent in challenging a solicitation before any competition or evaluation has occurred." *Id.* at *21. Specifically, the Court explained:

> In a true pre-award protest, however — *e.g.*, challenging the terms of a solicitation — no proposals have been submitted, no offers have been evaluated, and no award has been made. There is therefore — as the Federal Circuit recognized in *Weeks Marine, Inc. v. United States* — "no factual foundation [ ] for a 'but for' prejudice analysis," because the ordinary instruments of the post-award inquiry simply do not exist. *CliniComp,* 904 F.3d at 1359 (quoting *Weeks Marine*, 575 F.3d at 1361). There are no bid evaluations to examine, no comparative scoring to scrutinize, and no way to ask whether a particular plaintiff might have prevailed over identifiable rivals in a competition that has not occurred. For this reason, the Federal Circuit in *Weeks Marine* recognized a relaxed standing test for pre-award challenges to solicitations: a plaintiff in that posture need only demonstrate a "non-trivial competitive injury which can be addressed by judicial relief." *CliniComp,* 904 F.3d at 1359 (quoting *Weeks Marine*, 575 F.3d at 1361–62).

[3]The Government suggests Saronic is seeking an OTA for its commercial O&S services for the sUSVs. Gov't Resp. at 17. Saronic has made no such request.

[redacted]

*Id.*

Here, the Government alleges that Saronic lacks standing under 28 U.S.C. § 1491(b)(1) and is not an "interested party" because Saronic did not submit a proposal and therefore cannot be a "prospective offeror." *See* Gov't Resp. at 9-10. The Government further contends that a contractor such as Saronic "does not become a prospective offeror merely because it would compete" if the solicitation were restructured to accommodate Saronic's "preferred business model," and even if the procurement were restructured, Saronic would still lack standing because there is purportedly "no way of knowing" whether Saronic would have the capability to perform any requirements in a stand-alone procurement relating to the sUSVs at issue. *Id.* at 10-11, 15.

The Government challenges Saronic's standing on the basis of this Court's holding in *Percipient.AI* – a case that is inapposite. *See* Gov't Resp. at 6, 8-9; *Percipient.AI, Inc. v. United States*, 153 F.4th 1226 (Fed. Cir. 2025). In *Percipient.AI*, the Federal Circuit held that the plaintiff, a prospective subcontractor that "could not and did not" submit a proposal as a prime contractor, lacked interested party status.[4] *Id.* at 1229, 1242-43. To the contrary, Percipient.AI filed a protest, multiple years after the award of a Task Order alleging that the Agency and prime contractor had failed to award Percipient.AI a subcontract for a portion of the work that was clearly included in the solicitation issued years earlier. *Id.* at 1230. In other words, Percipient.AI did not timely challenge the terms of a solicitation as unduly restrictive of competition and specifically stated it had no intent to compete as a prime contractor.

---

[4] Percipient.AI argued that standing under the Tucker Act should not be limited to "actual or prospective" bidders when the challenge is made against an alleged violation made "in connection with" a procurement – not the solicitation itself. *See Percipient.AI*, 153 F.4th at 1235. The Federal Circuit, however, rejected that argument and held that only actual or prospective bidders have standing, regardless of the type of challenge brought under the Tucker Act. *See id.*

[redacted]

Here, Saronic timely challenged the procurement before the Solicitation due date on the basis that, had the Agency followed relevant law, Saronic would be a prospective bidder for the prime contract and would have submitted a proposal for the prime contract. The Court's holding in *Percipient.AI* is therefore inapplicable. The more relevant – indeed, controlling – case is *Palantir USG, Inc. v. United States*, 129 Fed. Cl. 218 (2016), *aff'd,* 904 F.3d 980 (Fed. Cir. 2018). In *Palantir*, the Government similarly argued that Palantir could not demonstrate it was a prospective offeror because it did not submit a proposal and, even if it had, it could not show that it was able to provide a solution meeting all of the Army's requirements using only commercial or nondevelopmental items. *Id.* at 285. The Government even introduced an expert to demonstrate that Palantir could not have provided the required solution. *Id.* at 287-288. The Court essentially rejected these arguments and held that Palantir was an interested party notwithstanding its failure to submit a proposal in response to the challenged solicitation. *Id.* at 289. The Court noted that the expert did not conclusively find Palantir incapable of meeting the requirements and, in any case, the "[Government]'s actions, at a minimum, put Palantir in a position in which it was unable to succeed regarding the DCGS-A Increment 2 procurement the moment the Army chose a developmental only approach without fully exploring the possibility of commercially available alternatives.*"* *Id.* at 288.

As set forth in Saronic's Complaint and MJAR, Saronic satisfies the interested party requirement. Saronic is a responsible offeror that would have submitted a proposal had the Agency properly defined its requirements in accordance with 10 U.S.C. § 3453, as reinforced by Executive Order 14271 and implementing Agency guidance. As in *Palantir*, the fact that Saronic did not submit an offer to perform the *bundled* FAR Part 15 procurement, which all but mandates only developmental efforts on a cost basis, is irrelevant because the Government's unlawful

[redacted]

failure to comply with 10 U.S.C. § 3453 and CICA placed Saronic in a position in which it was unable to succeed the moment the Government incorporated the sUSV services into noncommercial Littoral Combat Ship ("LCS") contracting program. Moreover, the record demonstrates that the Government never analyzed the capabilities of small businesses that provide sUSVs O&S commercial services. The Government therefore has no basis to contend that Saronic cannot perform the required services.[5] Had the Government conducted the required market research and analysis, it would have found that Saronic is fully capable of performing the requirements.[6]

Unfortunately, though, Saronic was deprived of the opportunity to submit a competitive bid in connection with this procurement and suffered economic harm. Indeed, Saronic has invested substantial resources into the development of the commercial sUSVs and the associated O&S services in the Solicitation. *See, e.g.*, AR, Tab 5, at AR 68-71. Moreover, Saronic is ready, willing, and capable of performing the sUSV O&S work efficiently and at fair and reasonable pricing. *See id*. Accordingly, Saronic has suffered a "non-trivial competitive injury" sufficient to render it an interested party. The Government's Motion to Dismiss must be denied.

---

[5] The Government's contention that Saronic is not a responsible contractor to perform the effort is, at best, premature as Saronic is a small business and SBA would render such a final decision. *See* 15 U.S.C. § 637(b)(7).

[6] The Government's arguments that Saronic is not capable of performing is based on no record evidence and runs contrary to publicly available information describing exactly how the Navy is using Saronic's sUSVs today. *See* Jaroslav Lukiv and Nardine Saad, *Sea drone rescues US Army helicopter crew near Strait of Hormuz*, BBC (Jun. 9, 2026), https://www.bbc.com/news/articles/cwy0l44ex5wo (describing how Saronic's sUSV assisted in the June 8, 2026 rescue of a U.S. Army AH-4 Apache helicopter crew shot down by Iranian forces near the Strait of Hormuz).

[redacted]

## V. RESPONSE TO DEFENDANT'S CROSS-MOTION FOR JUDGMENT UPON THE ADMINISTRATIVE RECORD

### A. The Government's Post-Hoc Rationalizations Fail To Demonstrate That The Government Properly Complied With 10 U.S.C. §3453, Preference For Commercial Products And Commercial Services, As Reinforced In Executive Order 14271

In its Complaint and MJAR, Saronic challenged the Government's failure to comply with 10 U.S.C. § 3453, as reinforced by Executive Order 14271, on three grounds: (1) the Government did not properly conduct market research to determine whether commercial services exist that meet the Government's requirements; (2) the Government did not properly define its requirements to accommodate commercial and nondevelopmental solutions; and (3) the Government failed to obtain the requisite approval for its decision to solicit a non-commercial product or service in accordance with Executive Order 14271. *See* Saronic MJAR at 21-29. The Government's response further underscores the deficiencies raised by Saronic.

The FAR stipulates that agencies must conduct market research to determine whether commercial items are viable before procuring a product or service. 48 C.F.R. § 10.002(c); 48 C.F.R. § 11.002(a)(2). In particular, "[t]he agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Palantir USG, Inc. v. United States*, 904 F.3d 980, 994 (Fed. Cir. 2018) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156 (1962)).

Here, the Government's response repeatedly – *but only vaguely* – cites to over 63 pages of the Administrative Record (*i.e.*, its issuance of a Sources Sought Notice and conduct of an industry day) to demonstrate the purportedly "extensive" market research it conducted between October and November 2024. *See, e.g.*, Gov't Resp. at 15 ("The Administrative Record

[redacted]

overwhelmingly demonstrates that the Navy conducted extensive market research. . ."); *Id.* at 19 ("The Navy conducted extensive market research between October and November 2024. . ."); *Id.* at 21 ("the Navy reasonably concluded – based on extensive market research and operational analysis – that the challenged Solicitation represented the most effective means of satisfying the Navy's integrated worldwide sustainment requirements."). Yet, fundamental deficiencies remain:

- First, the Government still fails to address the central deficiency: the market research on which it relies on *does not include the sUSV component*. As explained in Saronic's MJAR, the Government's Market Research Report and subsequent Acquisition Plan [redacted] but the only RFI included in the AR was directed toward LCS work – not sUSVs. *See generally*, AR, Tab 4. Similarly, the Government's Acquisition Plan only vaguely addresses [redacted] while providing no consideration for the sUSV component. *See* AR, Tab 11, at AR 212.

- Second, the Government fails to address the fact that much of the market research upon which it relies was conducted in 2024 (*See, e.g.*, AR, Tab 4; AR, Tab 3), yet the Solicitation was not issued until 2026. By that point, any such market research was stale, as evidenced by the Navy's own admissions concerning Saronic's rapid development during that time period. *See, e.g.*, AR, Tab 5, at AR 69 [redacted].

- Third, even assuming, *arguendo*, the Government updated its market research since 2024 (which the Navy concedes it did not do), it failed to consider readily available information that was critical to its analysis. By its own admission, the Government did not review the existing OTA award, which was administered within the same agency, *publicly praised by the Secretary of Navy*, and contained information directly bearing on the commercial availability of the sUSV O&S component.

As set forth in Saronic's MJAR, the Government's market research suffers from the same deficiencies identified in *Palantir*, 904 F.3d 980, because it consisted of nothing more than pre-determined, conclusory statements directed toward a single objective: procurement of the required O&S services through combined FAR Part 15, non-commercial procedures seeking a largely cost reimbursement type contract. As the Court found in *Palantir*, the Government failed

[redacted]

to meet its obligations where the ultimate determination excluded commercial items from consideration in a conclusory fashion (despite the agency being on notice that a commercial item might exist to satisfy its requirements). 904 F.3d at 994 ("Here, the administrative record plainly shows that the Army was on notice that Palantir's product might be a commercial item that would satisfy its requirements, whether as-is or with modifications. Despite that notice, the Army's ultimate determination regarding its market research excluded commercial items from consideration in a conclusory fashion."). The record must be sufficient to permit meaningful judicial review. *See id*. Here, there is nothing in that record that would constitute a sufficient basis for meaningful judicial review and the Government was on notice of at least some information – the OTA – which it emphatically asserts was not considered. AR, Tab 5, at AR 68-71. The Government thus failed to satisfy its obligations under 48 C.F.R. § 10.002(c) and 48 C.F.R. § 11.002(a)(2).

Moreover, the Government has failed to demonstrate that it properly defined its requirements to accommodate commercial and nondevelopmental solutions. Through a series of post-hoc rationalizations, the Government asserts operational risk in the abstract while never demonstrating that it analyzed the sUSV commercial market – or considered readily available information – before selecting the most commercially restrictive procurement path available.

Specifically, the Government's principal argument is that the Solicitation seeks integrated worldwide sustainment support (a "single operational ecosystem") for operational LCS MM and sUSV assets, that the statute "does not compel agencies to fragment integrated operational procurements merely because some commercial technologies may exist somewhere within the broader requirement," and it does not require agencies to "subordinate operational readiness to a protestor's preferred commercial business model." Gov't Resp. at 19. The Government

[redacted]

repeatedly emphasizes that agencies are afforded "broad discretion" to define requirements implicating "operational readiness and national defense interests." *Id.* at 16, 19.

At the outset, this rationalization is internally inconsistent. If the Government truly sought to fulfill its national security needs promptly and ensure continuity, it would procure these items through more expedient commercially available means, not through the more burdensome non-commercial, FAR Part 15 procurement procedures that favor development on a cost reimbursement basis.

Additionally, although agencies are afforded deference in addressing warfighting needs and operational risks (as the Government repeatedly cited with *Savantage v. United States*, 595 F.3d 1282 (Fed. Cir. 2010)), the Government still is required to comply with procurement statues and regulations, document those needs, and make a deliberate determination as to whether the requirements can be procured as commercial products or services pursuant to 10 U.S.C. § 3453, as reinforced by Executive Order 14271 and implementing guidance. Post-hoc rationalizations are insufficient.[7] *See, e.g., Palantir USG, Inc. v. United States*, 904 F.3d 980, 990-95 (Fed. Cir. 2018) (finding that the agency did not rationally use its market research results to determine whether there are available commercial items); *Honeywell Int'l, Inc. v. U.S.*, 142 Fed. Cl. 91 (2019) (interpretation of regulation was an improper post-hoc rationalization advanced by an agency seeking to defend past agency action against attack).

As explained in Saronic's MJAR, the only point in the Administrative Record providing a nexus between national security and the Government's commerciality determination [redacted]

[7] When an agency proposes to solicit a non-commercial product or service, Executive Order 14271 requires written evidence of market research and price analysis, including the specific reasons a non-commercial product or service is required. Exec. Order No. 14271, 90 Fed. Reg. 16433 (Apr. 15, 2025). No such thing exists in the record.

[redacted]

conclusory statement identifying the entire procurement as a "major weapon system," with a notation that on this basis alone, [redacted] *See* AR, Tab 11, at AR 212. The Administrative Record is entirely devoid of any finding deeming the procurement of the sUSV O&S services as a noncommercial "major weapon system" that would justify ignoring the statutory requirements of 10 U.S.C. § 3453. Instead, the Government now relies on what appears to be a vague post-hoc justification that its national defense interests could not be fragmented without creating operational risks, and that this purportedly formed the basis for its determination that no element of the O&S services could be procured as commercial services. Gov't Resp. at 20.

It is a well-established principle that post-hoc litigation arguments cannot substitute for a contemporaneous administrative record, nor will the Court blindly accept generalized claims of national security as a basis for procurement decisions. Indeed, recent precedent in *Palantir USG, Inc. v. United States,* 129 Fed. Cl. 218 (2016), *aff'd*, 904 F.3d 980 (Fed. Cir. 2018), makes clear that national security considerations do not override the commercial preference requirements set forth in 10 U.S.C. § 3453, as reinforced by Executive Order 14271. In *Palantir*, as here, the Government argued that injunctive relief was not appropriate because compliance with the commercial preference requirements would cause a disruption in national security due to delays. *Palantir USG*, 129 Fed. Cl. at 294-95. This Court found, however, that there was insufficient evidence that a delay in making an award would create national security concerns, noting that the Government's brief provided only generalizations of the national security concerns at issue, and "merely conclusory assertions of national security do not suffice to defeat motions for injunctive relief" (*Id.* (citing *Crowley Tech. Mgmt., Inc. v. United States*, 123 Fed. Cl. 253, 266 (2015); *GTA Containers, Inc. v. United States*, 103 Fed. Cl. 471, 493 (2012))), a decision affirmed by the

[redacted]

Federal Circuit. *See* 904 F.3d 980 (Fed. Cir. 2018). Ultimately, this Court required the Government to rescind its solicitation and solicit bids from offerors who would provide commercial items.

The Government's arguments here suffer from the same flaws as the Government's arguments in *Palantir*, and therefore the Government's response fails to demonstrate that it complied with 10 U.S.C. § 3453, as reinforced by Executive Order 14271. The Government should rescind its Solicitation and solicit the sUSV component from small business offerors who are ready, willing, and able to provide these commercial services promptly and at a fair and reasonable price.

### B. The Government Has Not Met Its Burden Of Demonstrating That Its Unduly Restrictive Specifications Are Reasonably Necessary To Meet Its Minimum Needs

Saronic demonstrated in its Complaint and MJAR that the Government's combination of O&S services for the LCS MM and sUSVs, use of cost-reimbursement CLINs, attendant accounting and business-system burdens, and evaluation of data rights predictably exclude – or, at best, severely disadvantage – commercial, small business providers without an adequate, record-based explanation tied to the sUSV O&S requirement. *See* Saronic MJAR at 29-36. This is a clear violation of CICA.

CICA "demands that agencies 'create specifications that solicit proposals 'in a manner designed to achieve full and open competition'.' " *Am. Safety Council, Inc. v. United States*, 122 Fed. Cl. 426, 435 (2015) (quoting *CW Gov't Travel, Inc. v. United States*, 99 Fed.Cl. 666 (2011) (citing 41 U.S.C. § 3306(a)(1)(A)–(C) (2011)). "Where a protester challenges a specification as unduly restrictive of competition, it is the agency's responsibility to establish that the specification is reasonably necessary to meet its minimum needs." *Omega World Travel,* B-

[redacted]

258374, 1995 WL 19607, at *1 (Comp. Gen. Jan. 13, 1995) (citing *ViOn Corp.*, B–256363, 1994 WL 317975 (Comp. Gen. June 15, 1994)).

Here, the Government has not satisfied this burden. To the contrary, the Government's response to Saronic's concerns further demonstrates the lack of deliberate procurement planning underlying this Solicitation and the absence of any meaningful consideration of the effects of its procurement decisions on small business commercial services offerors.

For example, with respect to the improper bundling of requirements, the Government argues that the procurement was initially structured from inception as a unified sustainment requirement encompassing more than O&S alone. *See* Gov't Resp. at 35. Thus, because the current solicitation requires only O&S services, the Government contends this represents "the opposite of bundling." *Id.* at 36.

The Government's position fails to address the actual bundling at issue, namely, the O&S services for both the LCS ships and the sUSVs. The fact that the Government may have unbundled a prior procurement relating solely to the LCS does not establish that the current Solicitation is free from improper bundling. The reality is that the Government incorporated sUSV O&S requirements – requirements that were not previously included in this procurement or the one it references in its arguments[8] – and combined them with the LCS MM requirement without any consideration of the effects on competition.

[8] *See* Gov't. Resp. at 35-36 ("the Navy did not combine previously separate requirements into a larger contract vehicle. To the contrary, the Navy expressly documented that the historical LCS Mission Module Design, Engineering, Production, and Sustainment ('DEPS') effort had been performed under a single contract vehicle and that the Navy intended to divide that effort into two separate procurements: one contract for Production Hardware and a second contract for Operations and Sustainment support.") (citing AR, Tab 11, at AR 189-192, 215).

[redacted]

Notwithstanding Defendant's litigation position that the Saronic OTA was not considered as part of the acquisition planning process for the Solicitation (Defendant's Motion to Strike at 8-9), NAVSEA was on notice and aware of the existence of the OTA as evidenced by the inclusion of the Corsair Production OTA approval (AR, Tab 5, at AR 68-71) and email discussions regarding concerns of the sUSV scope as part of the procurement (AR, Tab 13, at AR 240-43 [redacted]

It is well established that bundling is only upheld where it is tailored to "a legitimate procurement objective" and justified. *U.S. Foodservice, Inc. v. United States*, 100 Fed. Cl. 659, 679 (2011) (citing *CHE Consulting, Inc. v. United States,* 552 F.3d 1351, 1370 (2008)). Here, not only was the Administrative Record devoid of any bundling analysis, (*see* AR, Tab 11, at AR 211 (in assessing the impacts of bundling, the Agency replied: [redacted] the Government's brief seemingly acknowledges that the consequences of adding the *sUSV component* to the LCS procurement were not considered.

Moreover, the Government's response fails to identify any meaningful consideration of the impact of its cost-type contract terms and data rights requirements, stating only that these requirements are rationally connected to the Government's legitimate operational needs. Instead, the Government reverts to its central theme that any decision to unbundle the requirements or modify the CLINs to maximize competition would purportedly jeopardize operational

[redacted]

effectiveness, deployment readiness, or mission execution. *See* Gov't Resp. at 25. However, as addressed in Section V.A above, this vague, post-hoc rationalization is entirely unsupported by the Administrative Record and, in any case, is irrational under the circumstances, because the sUSV O&S requirements exist as commercial services and can be procured through more efficient and cost-effective means.

Critically, the Government's cost disclosure requirements (*see, e.g.*, AR, Tab 16, at AR 370-71; AR, Tab 20a, at AR 470-71) are unduly restrictive of competition because they unreasonably exclude commercial contractors and nontraditional government contractors that do not maintain, and thus cannot provide, the level of cost data required by the Solicitation. Also, the Government's requirement for Government Purpose Rights in all in Technical Data/Computer Software/Computer Software Documentation ("TD/CS/CSD"), including commercial TD/CS/CSD (*see, e.g*., AR, Tab 16, at AR 368, 380; AR, Tab 20a, at AR 468), are unduly restrictive on competition because they unreasonably put commercial contractors, companies that developed their TD/CS/CSD at private expense, at a competitive disadvantage without serving the Government's minimum needs. Indeed, as structured, an offeror who proposes to re-develop the TD/CS/CSD on a cost reimbursement basis, regardless of how much such effort would cost or how long it would take, would be at a competitive advantage against an offeror who already developed the TD/CS/CSD at its own expense and could perform the commercial services at a commercially reasonable price and thus eliminate the government's exposure to long delays and uncontrollable costs. The Government has not provided a rational

[redacted]

explanation for this nonsensical approach that violates law and regulation.[9] Therefore, Saronic is entitled to a permanent injunction.

### C. The Government's Market Research And Decision Not To Set Aside The Operation And Sustainment Requirement For sUSVs For Small Businesses Was Improper Because It Was Based On The Irrational Assumption That Fragmentation Would Interfere With Operations

Predictably, the Government's response to Saronic's small business set-aside challenges mirrors the repetitive themes identified in Sections V.A and V.B above: that there are no small businesses that can perform the requirement because fragmentation of the sustainment enterprise (*i.e.*, by setting aside the sUSV component) could allegedly [redacted] Gov't. Resp. at 33. However, as explained in Saronic's Complaint and MJAR, this finding is predicated on the false assumption that the contract must include non-commercially available O&S services for both the LCS and the sUSVs.

As demonstrated above, the Government has not provided a rational basis for bundling these requirements. In fact, it did not consider the implications of bundling the sUSV component at all. Moreover, setting aside the sUSV component would not interfere with operations; rather, it would enable faster, more efficient procurement through commercial means.

This Court has held that the Government's assessment of small business capabilities must "be based on sufficient facts so as to establish its reasonableness." *Mgmt. & Training Corp. v. United States*, 115 Fed. Cl. 26, 44 (2014) (citing *Gear Wizzard, Inc. v. United States*, 99 Fed. Cl. 266, 282-83 (2011)). Here, the Government's market research was clearly not predicated on sufficient facts. Had the Government appropriately left the sUSV O&S component as a

[9] Moreover, this approach is contrary to the Administration's policies and direction of Congress in the Fiscal Year 2026 National Defense Authorization Act. *See generally* National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, 139 Stat. 718 (2025).

[redacted]

standalone requirement or at least was open to the use of commercial, fixed price O&S services for the sUSVs as part of the instant Solicitation, then the Government's market research of small business participation would have found that multiple small businesses could have effectively participated as prime contractors. *See* Saronic MJAR at 37 ("[T]here are multiple U.S. small businesses, in addition to Saronic – [redacted] – who also manufacture and deliver sUSVs and provide O&S services.").

**D. Saronic Established All Four Factors For Injunctive Relief**

Saronic established in its MJAR that it is entitled to injunctive relief, and the Government's response fails to rebut this showing. Specifically, Saronic demonstrated: (1) a strong likelihood of success on the merits as the Government failed to conduct any market research relating to the sUSV O&S services that are available as commercial services; (2) irreparable harm, in that Saronic has invested substantial resources into the development of the Corsair sUSV and associated O&S services and the Government's unlawful procurement actions have deprived Saronic of the opportunity to compete fairly for the O&S requirements; (3) the balance of hardships weighs in Saronic's favor, as the Government's concerns regarding procurement delays are unfounded because commercial services are more quickly procured and obtained through multiple means (*e.g.*, via a FAR Part 12 or FAR Part 8 procurement), and Saronic is ready, willing, and able to provide the required sUSV O&S services through a procurement that permits commercial services; and (4) the public interest favors injunctive relief, because the public has a compelling interest in fair and lawful competition for government contracts and in ensuring that agencies comply with applicable procurement statutes.

[redacted]

The Government's rebuttal of Saronic's request for injunctive relief merely recycles the unsupported themes presented in its cross-MJAR, namely, that (1) the Saronic cannot establish success on the merits because the Government conducted "extensive market research" to support its determination that there were no commercial services, (2) the Government would incur substantial "operational harm" because delay or disruption of the procurement could "interfere with military readiness, national defense interests, or operational continuity," and (3) as a result, balance of hardships favors the Government and "public interest is best served by allowing the Navy to proceed with that operationally necessary procurement without judicial disruption." Gov't Resp. at 39-41.

As Saronic has demonstrated herein, however, these arguments amount to nothing more than impermissible post-hoc rationalizations unsupported by the administrative record. In particular, the Government's market research was stale, insufficiently tailored, and by admission, even failed to consider close-at-hand information possessed by the Navy. Further, through a series of post-hoc rationalizations, the Government asserts operational risk in the abstract to justify its actions while never demonstrating that it analyzed the sUSV commercial market – or considered readily available information – before selecting the most commercially restrictive procurement path available. Thus, the Government failed outright to comply with 10 U.S.C. § 3453, as reinforced by Executive Order 14271 and, instead, issued a solicitation that is unduly restrictive of competition in violation of CICA and unduly limits small business participation.

Moreover, this Court made clear in *Palantir* that "merely conclusory assertions of national security do not suffice to defeat motions for injunctive relief." *Palantir USG*, 129 Fed. Cl. at 294 (citing *Crowley Tech. Mgmt., Inc. v. United States*, 123 Fed. Cl. 253, 266 (2015)). And, in any case, the Government's justification on this point is irrational, because the time required to

[redacted]

issue a procurement for the sUSV O&S commercial services is minimal compared to the time and cost associated with its current path of procuring largely a cost reimbursement contract for both the development and provision of these services. At bottom, none of the reasons the Government provided to justify its restrictive, anti-commercial services procurement demonstrates sufficient operational harm that would balance in its favor or serve the public interest. To the contrary, it is clearly in the public interest for the Government to solicit and purchase existing commercial services at a price by holding a fair and lawful competition.

## VI. CONCLUSION

For the reasons above, as well as in Saronic's MJAR, the Government's motion to dismiss and cross-motion for judgment upon the administrative record should be denied. Accordingly, Saronic respectfully requests that the Court grant Saronic judgment on the Administrative Record and issue a permanent injunction in favor of Saronic.

Dated: June 30, 2026

Respectfully submitted,

Signed by:
Anne Perry
E1032B55CE3A4D3...

Anne B. Perry
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006
(202) 747-1913
aperry@sheppard.com
*Attorney of Record*

*Of counsel:*
Ryan E. Roberts
Katie A. Calogero
Christie M. Alvarez
Lillia J. Damalouji
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Kendra L. Wharton
WHARTON LAW PLLC
*Attorneys for Saronic Technologies, Inc.*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing, Plaintiff Saronic Technologies, Inc.'s Response to Defendant's Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record, filed via electronic filing with the Court on June 30, 2026, was served on June 30, 2026, upon the following via email:

Delisa M. Sánchez
Trial Attorney
U.S. Department of Justice
Commercial Litigation Branch
National Courts Section
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
E-mail: Delisa.Sanchez@usdoj.gov

Respectfully submitted,

DocuSigned by:
Anne Perry
E1032B55CE3A4D3...

Anne B. Perry
SHEPPARD MULLIN RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW
Suite 100
Washington, DC 20006
(202) 747-1913
aperry@sheppard.com
*Attorney of Record*

*Of counsel:*
Ryan E. Roberts
Katie A. Calogero
Christie M. Alvarez
Lillia J. Damalouji
SHEPPARD MULLIN RICHTER & HAMPTON LLP

Kendra L. Wharton
WHARTON LAW PLLC

*Attorneys for Saronic Technologies, Inc.*